Good morning, Your Honors, and welcome to another very typical sunny Seattle day. May it please the Court, my name is Sandra Cohen, Assistant City Attorney for the Appellants, the City of Seattle, and its Ethics and Elections Commission. Ten minutes is a very short time. I'd like to try to reserve four minutes for rebuttal. I will first touch briefly on the mootness issue identified in this panel's order, and then move on to the merits of the case. No city action made this case moot if it is indeed moot. If the Court decides that it is moot, then Munsingware applies, and the city should not bear the ill effects of having an unappealable adverse decision below. Therefore, the proper remedy, if the case is moot, would be to dismiss the appeal, vacate the district court order, and allow the district court to determine the fate of the state claims. What's the city's bottom line position on mootness? Do you think the case is moot or not? Well, we do agree with Mr. Cogswell that the great weight of case law in the Ninth Circuit is that election cases should be reviewed on appeal, even though the immediate controversy is passed, because otherwise the same circumstance is capable of repetition and will always evade review. Ninth Circuit, when you say great weight, it seems to indicate, and I think I agree, that the Ninth Circuit case law seems to go both ways. I would not disagree with Your Honor on that. But I do think the great weight indicates that election cases do have to be reviewed. There should be some indication that the plaintiff or the – that there's some desire or interest on the part of the plaintiff to, you know, participate in another election or … Well, Mr. Cogswell did file for election one prior time, prior to 2001. He did file in 1999 as well. He remains a very active citizen in the community. But the city is not in control of that aspect of the case. Okay. Moving on to the merits, then. This is not a traditional public forum case. Thus, there's no constitutional requirement of narrow tailoring, of a compelling state interest, or least restrictive alternatives. There really are only two legal questions here. One, is the subject matter restriction imposed in this forum on each candidate's own limited forum a reasonable subject matter restriction? That restriction, of course, is that the candidate discuss the candidate him or herself, not his opponent. Is that reasonable in light of the purpose of affording that candidate a forum at public expense? And the second question is, does that subject matter restriction, then, discriminate on the basis of the candidate's viewpoint? It seems clear to us that the restriction does not discriminate on the basis of viewpoint. The limitation for each candidate is that he or she is limited to one subject. That's the purpose of this forum that's provided. If I am the candidate, the purpose, the subject of my statement is me. If I want to talk about my opponent, I'm talking about a different subject than the one for which the state and the city have defined the forum. Well, suppose the opponent says something like this. Suppose in this case, the opponent is the incumbent. Opponent says I'm running for reelection and presumably he's complying with the ordinance. And my record will show that I've always been in favor of public transportation and public transit. Right. And let's suppose he voted against every bill to, you know, ever improve public transit. Now, the opponent can say a word about that. The format of the of each candidate's statement is that it's a one shot forum. This is not the only forum available, of course, for every candidate. Can you say, unlike others in this race, you know, one, I will vote for public transit and two, I won't deceive you. Could you say that the reference to others in this race would be about himself? What he would do. With the introduction, I believe I heard of like others in this race. Now, that reference would be would make it improper. The opportunities abound through private speech for the back and forth of the ordinary campaign advertisements. This is a one shot, no rebuttal. Talk about yourself. Opportunity to tell the voters who they will be electing if they vote for me in my statement. It is not a incumbent versus challenger distinction. It provides a free forum for each candidate to reach every household, regardless of the familiarity, the funding of that particular candidate's campaign. The statistics that are in the record at E.R. being unseated any less often than in races where no similar restriction is enforced. I think it's also interesting that city council challengers in Seattle do consider this voters pamphlet very important to getting themselves known to the voters. Interestingly, also, our ethics and elections commission has shown itself not to be inclined against challengers at all. At E.R. 42, there happened to be minutes from the ethics commission showing that they made the very conscious decision not to allow judicial robes to be worn by incumbents in their photos in the voters pamphlet because they felt that that could give an incumbent an unfair advantage. What was wrong with the district court's reasoning? Well, I think, first off, Your Honor, we are very fortunate to have a really outstanding district court panel here in Seattle. We have a uniformly high-quality district court bench. I agree. It's very unusual. It's very unusual that I find myself disagreeing with anything that our district court has done. And it is difficult to find myself disagreeing with Judge Lasnik. But I do think there are two fundamental problems. One, he misread the state law. I think footnote four is completely misguided. The state law, that's E.R. 101, the state law very clearly defines the purpose of this forum, which is permitted for local governments to adopt. And that is, it is to allow the candidate to talk about him or herself. The district court came up with a theory. First off, of course, the state statute is not being challenged in this action. That challenge was withdrawn. So we presume it constitutional. The district court has the idea that apparently you could necessarily refer to someone else in order to introduce yourself. If that's the mechanism and the standard that we're supposed to use in order to decide whether something is or is not to be included, that really inserts the government administrator far more deeply into the content of a pamphlet statement than the city's rule. We think the state law and the city's rule both reinforce the very narrow purpose of the voters pamphlet, which is find out who you would be electing if you vote for me. The second problem, I think, with the district court opinion and with Mr. Cogswell's argument fundamentally, is that they would like to redefine the subject of this limited 400-word forum. But it is not the purpose of the 400-word forum provided to Mr. Cogswell to host a full debate or discourse on all the various issues of the campaign for a city council seat. Mr. Cogswell's entire argument is premised on that mistaken wish or desire. It is up to the legislative body that provides the forum to determine its subject. In this case, we think that limitation is reasonable and does not discriminate on the basis of candidates' viewpoint. I would like to reserve the remaining minute, if I might, for everybody. Thank you. Counsel, but let me one quick question, and I think I'll tell you in advance it's a favorable question. It would be very easy for the content of the brochure, without expressly saying, as no one else has voted or as my opponent voted, to be, when considered under the circumstances, as a narrow viewpoint and to run into the problem that the district judge had. But that would be a matter of application of the ordinance. The problem I have with this district court's holding is that he held it facially unconstitutional. You would agree with that? I would also agree that that is a problem with the district court's ruling. Very easily, you might have an application problem. I don't believe that at all, that we had an application problem as concerns Mr. Cogswell. I'm saying that the problem might arise, but it would be an application problem and not anything in this case. I have not thought of a hypothetical set of facts in which I thought it would be, but I certainly agree, Your Honor, that this case — in this case, the court — the district court's facial finding of invalidity is incorrect and should be reversed. Thank you. Spoken like a cautious lawyer. Good morning, may it please the Court. My name is William Rava. Together with others at Perkins Coie and in cooperation with the ACLU of Washington, I represent Grant Cogswell, the plaintiff and appellee here. Judge Lasnik's conclusion that the restriction on speech is unconstitutional should be affirmed for two reasons. First, the restriction discriminates on the basis of viewpoint, and second, the restriction is unreasonable in light of the purpose of the forum. I would agree with — How does it discriminate on the basis of viewpoint? It has a clear rule that, you know, that applies neutrally to everybody who wants to use that forum. You can say anything you want to up to the X number of words about yourself. Why is that viewpoint discriminatory? It's viewpoint discriminatory because it restricts speech on an otherwise allowable topic. In this instance, the otherwise allowable topic is a candidate's qualifications for office. The speech that is restricted is all opponents' views of the candidate's qualifications. Well, it would certainly be a strong argument, you know, if this were a — well, first of all, do you agree this is a limited forum? I do. All right. So if it were — Well, a limited public forum, Your Honor. Right. Excuse me. Limited public forum. But if it were just, you know, a public forum that was not limited, I think your argument would be much stronger. But it doesn't carry nearly as much weight in a limited forum, does it? Well, the level of review as to the restriction is different in a traditional public forum than in a non-public forum. And a limited public forum is a version of a non-public forum. We only get reasonable in this review here. But in any event, a restriction in any forum cannot be viewpoint discriminatory. That's a — that's a bright line rule. So the fact that this is a limited public forum does not impact the level of review insofar as the viewpoint issue — The city can decide the scope of the forum, can decide what the limit of the scope of the forum is, can't it? The city can limit the subject matter of the forum so long as that limitation is reasonably related to the purpose of the forum, yes. And if it is truly only the opinion of the candidate, why is that viewpoint discriminatory? Again, because — let me offer some concrete terms here. Mr. McIver was able to discuss his record on transportation issues. Those were the only viewpoints presented. Is Mr. McIver's statement in any place in the record? Yes. Mr. McIver's statement is at SER 154. SER? SER 154? Yes, I believe so. It's at the top of that page. In the second — in the second column, about halfway down, Mr. McIver talks about his priorities and goals and includes transportation issues. Mr. Cogswell chose to run against Mr. McIver in part because he disagreed with his views on transportation issues. The voters' pamphlet presented only one view on Mr. McIver's record on transportation issues, Mr. McIver's. It prohibited all others from speaking on Mr. McIver's record on transportation. It licensed Mr. McIver to fight freestyle while requiring Mr. Cogswell and all Mr. McIver's opponents to abide by the rules of the Marquis of Queensberry. It is difficult to distinguish between viewpoint and subject matter in many instances. The juror's prudence on this is anything but clear. Judge Fletcher in the recent Sammartano case called the viewpoint case law confusing, elusive, and difficult to understand. And I would agree that the primary difficulty is distinguishing between viewpoint and subject matter. But both the Sammartano case and the Rosenberger case, the Supreme Court case from 1995, aid us in drawing this elusive line. Courts must carefully scrutinize the level at which a restriction operates, Judge Fletcher held in Sammartano, and be wary of attempts by the government to argue that a restriction operates on a higher level, on a permissible level, that is, on a subject matter level, when in fact it is operating on a lower level, on an impermissible, unconstitutional viewpoint level. If the topic is entirely barred from discussion in a forum, then it is likely the restriction is likely operating on a permissible higher level. It's barred. It depends on how you, I suppose, how you categorize the subject matter being discussed. I mean, in this case, Judge Leisnick said the subject matter was the incumbent's record. You could characterize it and say, well, each candidate can talk about his or her own record. That's not viewpoint discriminatory, isn't it? If you say each candidate can discuss his or her own record, which is only which is all the incumbent. If you categorize the topic in that fashion, it's not viewpoint. So doesn't it depend on, you know, how you come to classify the subject matter? It absolutely does. And again, it's a very tough distinction to draw between what constitutes a viewpoint and what constitutes a subject matter. I believe the example that you just gave me is in line with the RCW, the I'm sorry, the revised Code of Washington, which Mr. Cogswell, he withdrew his challenge against that because we believe, and Judge Leisnick agreed, that it is susceptible to a constitutional interpretation. If the city code were to say that the candidates can discuss his or her own qualifications for office and were to enforce that to allow qualifications for office to include reference to the opponent, then I would agree that it would not be viewpoint discriminatory. But if it's enforced in a way that restricts reference to a candidate's, to a candidate opponent's qualifications while allowing that opponent to discuss those qualifications, then it is viewpoint discriminatory. You know, I thought it was interesting that the district court, and apparently your position is, is that you can, when you read the State statute, it says any statements by a candidate shall be limited to those about the candidate himself or herself. And from that, you glean that that could be read to allow comments about your opponent. Yes, because we believe that it does make sense that in many instances a candidate needs to introduce himself relative to his opponent. Contested elections are inherently comparative, and the examples that Judge Leisnick used below are good ones. George Nethercutt beat Tom Foley, then the Speaker of the House, in part because he said that he wouldn't run for more than three terms and because he lacked experience, and the voters bought into it. Nethercutt ran in reference to Foley, and six years later, after Nethercutt broke his promise not to run for more than three terms, his opponent ran against him by saying he broke his promise. He ran in reference to his opponent. The lesson, I believe, is that it's important in many instances for voters to know who a candidate is not. The recall petition of the governor in California is going to raise these exact same issues. Opponents' records can be central to a candidacy, and this goes, we believe, to why the restriction is unreasonable in light of the purpose of the forum. It also constitutes an impermissible value judgment about what information voters should get. Again, the purpose of the First Amendment here is to aid our democracy by allowing an unfettered interchange of ideas. In light of the voter education purpose, which is what Judge Lasnik found, it's not reasonable to allow the city to cabin the debate by paternalistically devaluing certain information while highlighting others. There's no reason to think, and the city can really offer none, that Mr. Cogswell's opinion on Mr. McIver's record on transportation issues. In all events, it's the voters and not the city that ought to be making that judgment. I would also point out that the city's logic here is just suspect. The city cannot and it has not attempted to explain how a prohibition on one off-topic subject somehow forces a candidate, directs a candidate to speak about what they think the candidate should speak about. Again, I would reference you to SER 53 here, in which there are statements by Mr. Stan Litman and Mr. Dan Hennick, which well illustrate the point. Mr. Litman spends his entire candidate statement, his entire 400 words, talking about child vaccinations and ranting against post-war, egomaniacal men like Al Gore Sr., George Bush Sr., and Bill Gates Sr. And what this has to do with city business, I don't know. Does this convey some information about Mr. Litman's candidacy? Absolutely. I would imagine that most voters, after reading Mr. Litman's statement, knew all they needed to know about his candidacy. But if you're going to allow Mr. Litman to discuss George Bush Sr. I don't know if there is a George Bush Sr., but if you're going to allow him to discuss George Bush Sr., then it certainly seems as logical, if not more logical, to allow Mr.   Instead, there is the effort in New York to see if it's more logical to allow Ritchie to nip the story of George Bush Jr. in an old archiver's record on transportation. It simply makes no sense. Finally, your honors, I would like to move on. Let me get back to the reason you drop your challenge against the state statute. It's because you believe it can be construed differently from the Seattle ordinance. Is that why? Yes, we do. So that if you if you win against the on the city ordinance claim, then you don't believe will be a moot victory in the sense that it would still be prohibited by the state law from accomplishing what your client wants to accomplish. No, you don't believe the state law is the bar. We don't believe so. And there's no evidence in the record to suggest so. In fact, we are search of other jurisdictions, municipalities, counties in the states, just that the other jurisdictions that have taken up the state's invitation through RCW twenty nine eighty one eight zero three zero to publish a local voters pamphlet. That Seattle is the only one that imposes the sort of restriction at issue here. Most of the other municipalities, most of the other states, local state governments do not impose a similar restriction. And in fact, they have not had the problem that the city has so vehemently forecast the state official interpreted the state statute. Not to my knowledge, Your Honor, the parade of horribles that the city continually forecast about about ganging up and about mudslinging occurring is to our knowledge. It hasn't happened in any of the jurisdictions that do not have the same restrictions at issue here. And in instances in which the city has not uniformly enforced their own restriction, hasn't come to fruition either. For those reasons, Your Honor, about the mutinous plan, the mutinous plan, I do not believe that the that there's nothing in the record that indicates that he's planning to run for city council the next election. No. And his political aspirations are, in fact, not relevant to the to the mutinous plan. This is what this court held in the Schaefer case, for example, that whether or not a particular candidate, the plaintiff challenging the the restriction or the the restricted activity was or was not going to be a candidate was was not relevant so long as there was some reasonable expectation that the restriction could be applied to some other candidate in the future. That's what was held in the Schaefer case in which Mr. Schaefer, a Nevada resident, had not filed any affidavits saying that he again intended to attempt to run for Congress in California. The State of California, in that case, argued that, well, it's moot because there's no evidence that Mr. Schaefer wants to run again. The Court rejected it. The Court rejected similar arguments in the Joyner case. And in case you'd like your letter brief. Yes, sir. Okay, Mr. Waller, thank you very much. All right, rebuttal. Just briefly, Your Honors. Again, the purpose of this forum. First of all, do you agree with the plaintiff's interpretation of the State statute that the Seattle ordinance is a little bit out of whack? Not at all, Your Honor. We think that the State statute is far more restrictive of the speech of the candidates in their particular forums than the city ordinance and that they need to be read together. The city ordinance is one way of encouraging or forcing candidates to obey the State law, which says they talk only about themselves. The purpose of this forum is not to say who you're not. It's to say who you are, because if you win the election, you're the one who's going to be sitting in that seat up there on the city council. And that's what the voters are being informed of in this city forum. It's a common sense restriction. I hadn't really noticed Mr. Lippman's statement. What does Mr. Lippman's statements about Al Gore, George Bush Sr., Bill Gates Sr. have to do with Al Lippman's background? Quite frankly, Your Honor, that seems to me to be a lapse in enforcement. I do think that those statements are contrary to the State law, and that seems to me to be a lapse. Now, keep in mind, the number of candidates that we have running at any time for mayor or city council is quite large. Well, somebody thought this was permissible under the ordinance. Or somebody didn't notice it or was not focused on it. That's not the impression you get from all the letters of how the executive director takes great pride in being very careful and reading in great detail every word in these statements. These particular- The declaration is pretty clear on that. Well, but the two, Mr. Sidron and Mr. Coswell, were the first, as far as we know, to draw the executive director's attention to what they perceived as an unconstitutionality in the local ordinance. They drew her attention to this and submitted alternative statements. Because of the quick timelines here, this thing happens, this happens really fast. They were the ones who drew her attention to it. They spent a lot of time proofreading and sending format and turning bold type into non-bold type and figuring out if you're over word count. There were different typos, too. Evidently. Somebody read Mr. Lippman's and this was perfectly permissible. I don't think that we can conclude that an affirmative decision was made in the context of the state law that that was permissible. Now, vaccines, the city does fund and have authority over a health department. And so that, I can see, is connected to something that Mr. Lippman might have the ability to act on in office. But, again, if you're a legislator at the local level, it would be a very common sense, reasonable approach to say we are not going to spend public money if what we have to do in our forum is allow each candidate with his 400 words to talk about anything that they want to talk about that they think is somehow going to be useful to the voters. What we want to provide the voters is who is this candidate. Mr. Henrich's statement here also is interesting. The arresting officer told a lie in his written report, claiming that I had confessed to snatching the purse. I think that one. That had to do with his background and his qualifications for. I think that does have to do with his concern about police brutality and civilian oversight of police, which is a very legitimate topic for him to say is his issue and is himself. It is that was his experience. Thank you very much. All right. Thank you. We thank both counsel. This case is now submitted for decision.
judges: Reavley, Tashima, Paez